UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
JOHN PURCELL,

                           Plaintiff,             **Civil Action No.: 16-CV-3555**
                                                  **(JMA)(AKT)**

      -against-

NEW YORK INSTITUTE OF TECHNOLOGY-
COLLEGE OF OSTEOPATHIC MEDICINE,

                    Defendant,
---------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
THE AMENDED COMPLAINT**

STEWART LEE KARLIN
LAW GROUP, P.C.

By:    DANIEL E. DUGAN, ESQ.
        *Attorney for Plaintiff*
        111 John St., 22nd Floor
        New York, NY 10038
        (212) 792-9670

## TABLE OF CONTENTS

**Item**                                                                                           **Page**

Table of Contents ............................................................................................................ i

Table of Authorities ................................................................................................... ii-iii

STATEMENT OF THE FACTS ................................................................................... 1-10

      A. Background of Purcell's Disability ............................................................... 2

      B. Second Year of Medical School ............................................................. 2-5

      C. Fourth Year of Medical School ............................................................. 5-6

      D. Purcell's Dismissal and Appeal ............................................................ 6-9

      E. Purcell's Current Action ...................................................................... 9-10

ARGUMENT .............................................................................................................. 9-18

      POINT I - Applicable Standards Regarding a Motion to Dismiss .............................. 9-10

      POINT II - Plaintiff has Properly Commenced this Action Alleging

      Discrimination Pursuant to the ADA, Title IX and NYSHRL .................................. 10-18

            A. Purcell's Allegations of Discrimination .................................................... 10-17

            B. The Action is Timely ............................................................................... 17

CONCLUSION ............................................................................................................. 18

i

**TABLE OF AUTHORITIES**

**Item**                                                                            **Page**

Ashcroft v. Iqbal,
        129 S. Ct. 1937, 1949 (2009) ...........................................................................10

Bell Atl Corp. v. Twombly,
        550 U.S. 544, 570 (2007) ................................................................................10

Bylerly v. Ithica College,
        290 F.Supp.2d 301, 305 (N.D.N.Y. 2003) .....................................................17

Curto v. Edmundson
        (04-0395, December 17, 2004). ......................................................................18

Doe v. New York Univ.,
        666 F.2d 761, 775-776 (2d Cir. 1981) ...........................................................11

Flores v. New York Univ.,
        79 A.D.3d 502 (1st Dep't 2010)......................................................................17

Kassner v. 2nd Ave. Delicatessen Inc.,
        496 F.3d 229, 237 (2d Cir. 2007)....................................................................10

McDonnell Douglas Corp v. Green,
        411 U.S. 792 (1973)........................................................................................11

Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,
        602 F.3d 57, 64 (2d Cir. 2010) .....................................................................10

Regents of University of Michigan v. Ewing,
        474 U.S. 214 (1985) .......................................................................................11

Roberts v. Royal Atl. Corp.,
        542 F.3d 363, 368 (2d Cir. 2008).....................................................................11

Roggenbach v. Touro College of Osteopathic Medicine,
        7 F. Supp. 3d 338 (SDNY 2014) .....................................................................11

Silverman v. New York Univ. School of Law,
        193 A.D.2d 411 (1st Dep't)..............................................................................17

Twersky v. Yeshiva Univ.,

993 F. Supp. 2d 429, 437 (SDNY 2014) ............................................................................18
Zeno v. Pine Plains Cent. Sch. Dist,,
        702 F.3d 655, 666 (2d Cir. 2012)......................................................................................12

**Statutes, Rules, and Procedures**

Executive Law ℂ 296 .........................................................................................................1, 11, 12

Fed. R. Civ. P. 8(a) ...........................................................................................................  10

Federal Rule of Civil Procedure Rule 12(b)(6).   .................................................  1, 10

20 U.S.C. § 1681 *et seq*...................................................................................................1, 11, 12

29 U.S.C. § 2617 .................................................................................................................1

42 U.S.C. § 12182 ...........................................................................................................1, 11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JOHN PURCELL,

                 Plaintiff,                 **Docket No.: 16-CV-3555(JMA)(AKT)**

    -against-

NEW YORK INSTITUTE OF TECHNOLOGY-
COLLEGE OF OSTEOPATHIC MEDICINE,

                 Defendant,
--------------------------------------------------------X

<u>**Memorandum of Law in Opposition to Defendant's Motion to Dismiss**</u>

The Plaintiff, John Purcell, submits this memorandum of law in opposition to Defendant New York Institute of Technology's ("NYIT") motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).

Purcell was a former medical student at NYIT's College of Osteopathic Medicine (the "Program") until his dismissal from the program in June 2013.  Purcell timely commenced the instant action, alleging discrimination due to his disability and perceived disability, gender (sexual preference) and retaliation for his complaints of discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. 12182 ("ADA"), Title IX of the Education Amendments of 1972, as amended, 20 U.S.C. 1681 *et seq.* ("Title IX") and the New York State Executive Law §296. ("NYSHRL")

Purcell's federal discrimination lawsuit set forth in the Amended Complaint is in no way barred by Article 78 of the New York State CPLR and is subject only to the three-year statute of limitations that governs Title IX, the ADA and the NYSHRL.

For the reasons set forth herein, Purcell requests that this Court deny NYIT's motion to

dismiss in its entirety.

**Statement of Facts**

**A.   Background of Purcell's Disability**

Purcell enrolled in the NYIT College of Osteopathic Medicine in 2009 as a medical student. During his enrollment at NYIT Purcell suffered from a disability and perceived disability (ADHD and Anxiety) that impacted major life activities including suffering from symptoms of chronic fatigue, headaches, insomnia, diminished sex drive, and memory, but in no way impaired his ability to execute his duties and responsibilities as a medical student and to complete the requirements necessary for graduation.  NYIT was aware of Purcell's disability as he disclosed it to a Dean in his 2nd year of Medical School.  This Dean informed other Deans at NYIT.  (Amd. Cmp. ¶¶ 8-10)

Additionally, Purcell's primary care physician, who diagnosed Purcell's ADHD and Anxiety, practiced in the Student Medical Center at NYIT and was also a professor at the School. Purcell's disabilities were common knowledge among the faculty at NYIT.  (Amd. Cmp. ¶¶ 11-12)

**B.     Second Year of Medical School**

During Purcell's second year at NYIT he began receiving incessant phone calls and Facebook messages in September 2010, which after a few weeks became distracting and unnerving, as they occurred at all hours of the day and night, and were received from different phone numbers and profile names.  Purcell believed that they were coming from an individual who he had recently ended a relationship with, but could not be sure at the time.  (Amd. Cmp. ¶ 13)

On October 22, 2010 Purcell arrived at NYIT (Institute for Clinical Competency) to take a practical exam in cardio/pulmonary medicine.  However, he was extremely anxious as a result of

2

the above-mentioned stalking situation which had been occurring and also the previous week spent studying. Instead of beginning the examination, Purcell decided to seek the help of Claire Bryant, Ph. D, a pre-clinical Dean at NYIT, and explained the situation to her. Dean Bryant suggested that he speak with other faculty, and brought Purcell to the office of Cheryl Newman, where Purcell also met Dean Abraham Jeger, Dean Felicia Bruno and Dean Mary Ann Achtzinger for the first time. Purcell, discussed his grades and personal situation with them. Once Purcell began describing the situation, Dean Jeger began interviewing Purcell from a psychological standpoint, including asking mini mental status type questions, focused schizophrenic questions, psychiatric questions and questions about Purcell's medical history. With all of these Deans present for the questioning, Purcell became embarrassed and upset and began crying. Purcell explained to them that he understood their concern but that he was not experiencing hallucinations or delusions regarding the stalking situation and that his roommates and friends had also witnessed it. The deans insisted that Purcell see his primary care physician, Dr. Carlos Maghaeles at the academic health center on campus. (Amd. Cmp. ¶ 14)

The Deans also suggested that Purcell schedule an appointment with Cheryl Newman, as soon as possible, which Purcell did the following week. Purcell informed them that his psychiatrist was already aware of the situation and Purcell was being counseled. Purcell said that he would leave campus to regroup, and that he was able to drive home, however the Deans would not permit him to leave and they all walked him across campus to the academic health center. (Amd. Cmp. ¶¶ 15-17)

The following week, Purcell was called to Dean Achtzinger's office to again discuss his health and security issues on campus with Defendant's security personnel. Dean Jeger and Dean Bruno were also present at the meeting, along with a campus security guard and the head of

3

security for the campus.  After the security personnel left the meeting, Purcell was again asked multiple questions about his personal life, medical history and medication.  (Amd. Cmp. ¶ 18)

At the conclusion of the meeting, Dean Jeger and Achtzinger asked to have Purcell's medical records released to them from Dr. Belkin.  Purcell explained that he was not hiding anything from them and that he did not feel it was necessary to release his medical records to them at this time.  He further expressed that he would like to consult with someone prior to signing any release.  However, at this point, Mary Ann Achtinger told Purcell to wait, and she brought in a staff attorney of Defendant, and she continued to urge him to sign the release, which he could hand write as dictated by the staff attorney.  At a follow-up meeting Mary Ann Achtinger again urged Purcell to sign a medical release for Defendant.  (Amd. Cmp. ¶¶ 19-20)

In a conversation with Defendant's student life counselor/coordinator, Linda Daroch-Short, she commented to Purcell that many of the deans which he was dealing with had old-school and religious viewpoints which did not allow them to be comfortable with or understand Purcell's situation and sexual orientation (Gay).  (Amd. Cmp. ¶¶ 21)

In regards to the stalking situation, Purcell had Donna Denatale, a former NYPD sergeant, investigate whether there were instances of repeated communications electronically and at Purcell's home, and Denatale was able to confirm such to Defendant to show that Purcell was not delusional or making up the allegations.  (Amd. Cmp. ¶ 22)

Purcell was informed by his roommate that she learned from faculty member Karen Sheflin, that Purcell was a frequent topic of conversation at staff meetings, including discussions about both his personal and academic life.  (Amd. Cmp. ¶ 23)

Purcell was also subjected to further discrimination based on his sexual preference in that he was sent x-rated pictures on a phone application (Grindr) by an employee of Defendant, Dr.

4

William Blazey.  Additionally, Purcell was subjected to homophobic remarks during lectures given by Dean Scandalis, as well as other staff, throughout the 2nd year.  In response, Purcell became instrumental in creating an LGBT club on campus, and during Purcell's third year he attended meetings at which he spoke about LGBT health issues and LGBT education for the faculty and staff because of the offensive and outdated comments/instruction that were being given in class. (Amd. Cmp. ¶ 25)

Specifically, in clinical case studies prepared and utilized by the NYIT faculty, medical histories of patients included such diagnoses as significant for homosexuality.  Additionally, Purcell heard a professor use the terms, pitcher and catcher to describe gay men when lecturing to the class.  (Amd. Cmp. ¶ 26)

Upon information and belief the faculty were aware of Purcell's complaints of discriminatory comments, as multiple professors sat in on these meetings and retaliated against him as a result.  (Amd. Cmp. ¶ 27)

**C.    Fourth Year of Medical School**

During Purcell's fourth and final year as a medical student he failed three clerkships, however two of those clerkships were determined to be defective as clerkships by the School. (Amd. Cmp. ¶ 28)

The first of these defective clerkships was directly due to the lack of structure and substance caused by the attending physician, Dr. John Imperio.  While Dr. Imperio is a respected physician and always professional to Purcell, he was operating his practice at a semi-retired level.  Dr. Imperio had minimal recent experience as a preceptor and due to these factors he was unsuitable to supervise Purcell's clerkship.  For example, Dr. Imperio was on vacation for two of the four weeks of the clerkship and could only instruct Purcell to "try to shadow other physicians," on days

5

Dr. Imperio was not at the hospital.    Purcell was not aware of the these issues at the inception of his clerkship and once he began, he had no opportunity to remedy the unsuitability of Dr. Imperio to supervise him.  Purcell would not have begun these clerkships with Dr. Imperio had he been aware of this.  (Amd. Cmp. ¶¶ 29-30)

Further, it must be noted that at the time Purcell chose his fourth year clerkships he was choosing between the paths of internal medicine and surgery, and thus Purcell was waiting to the end of the scheduling period to make his clerkship choices.  Further complicating matters was Hurricane Sandy and the cancellation and rescheduling of rheumatology.  Dr. Goldstein, who had always claimed his interest and availability in resolving any issues related to clerkships, was particularly unhelpful and disinterested in assisting Purcell in scheduling his clerkships.  Dr. Goldstein sarcastically told Purcell that he would never set foot in the NYU Medical Center as a physician.  (Amd. Cmp. ¶¶ 31-32)

Purcell received a failing grade in his third clerkship (Spring 2013), Trauma Surgery, as a result of an attendance issue, which was exacerbated by the after-effects of Hurricane Sandy. Trauma Surgery is a sub-specialty, and surgery residents rotate frequently through the trauma surgery team, making it difficult for a student to stay with one particular resident for a set number of hours per week.  Purcell again tried to address this scheduling situation with Dr. Goldstein but received no assistance, thus resulting in Purcell's failure of the third clerkship.  (Amd. Cmp. ¶ 33)

## D.    Purcell's Dismissal and Appeal

On May 5, 2013 Purcell walked at his graduation from NYIT.  It was not until, a week later, that Purcell was informed that he was scheduled for a disciplinary hearing on May 22, 2013 with the Student Discipline Review Board on May 22, 2013 based on an allegation that he violated the NYIT College of Osteopathic Medicine Code of Conduct for Academic Honesty.  (Amd. Cmp.

¶¶ 34-35)

By letter dated May 22, 2013, from Dean Wolfgang G. Gilliar, D.O., Purcell was informed that, the Board has determined that you are guilty of violating the NYIT College of Osteopathic Medicine Code of Conduct for Academic Honesty.  (Amd. Cmp. ¶ 36)

The Board is imposing the penalty of suspension for a period of at least six months as defined in the 2012-2013 Student Handbook as:

> **Suspension**- Suspension from academic enrollment and revocation of other privileges or activities and from the privilege to enter on the campus premises of related facilities for a period of time not to exceed two years.  Criteria for return if appropriate will be specifically outlined in writing.  Suspension becomes part of the student's permanent record.
> The potential return from the suspension is contingent upon a complete review of evaluations of your fourth year clerkships and a psychiatric evaluation performed by a physician chosen by the College.  (Amd. Cmp. ¶ 36)

Defendant had no legitimate basis for conditioning his return from a suspension on the results of a psychiatric evaluation.  By letter dated June 3, 2013, again from Dean Gilliar, Purcell was informed that the above conditions for possible return from a suspension outlined in the May 22, 2013 were contingent upon a complete review of evaluations of your fourth year clerkships. The letter states that it was determined that you have failed *MTIM 808*, *Clinical Clerkship: Geriatric Medicine*, *MTSU 818, Clinical Clerkship:Trauma Surgery and MTIM 809, Clinical Clerkhsip: Hematology/Oncology*.  As a result, Purcell was dismissed from NYIT College Osteopathic Medicine.   (Amd. Cmp. ¶¶ 37-38)

According to the June 3, 2013 letter Purcell had the right, "to petition to be reinstated to repeat the current curriculum, on academic probation, as a member of the following year's class," by writing a letter to the Dean of Student Affairs and meeting with the Student Progress

Committee.  Purcell met with the Student Progress Committee on June 13, 2013, and Dean Gillar issued a letter on June 14, 2013 stating,

> Following your meeting with the Student Progress Committee on June 13, 2013 the committee is requiring a psychiatric assessment at the Zucker Center before rendering their decision on your petition to return and repeat the fourth year.  I concur with their decision. (Amd. Cmp. ¶¶ 39-40)

Defendant improperly based Purcells Petition for Reinstatement on Purcell's mental health. In particular, the first questions posed by the Student Progress Committee on June 13, 2013, were those which probed Purcell's mental health situation.  In particular, at the start of each committee meeting Atzinger would make everyone present aware of Purcell's medical history and that he was treating with Dr. Belkin.  (Amd. Cmp. ¶ 41)

At this June 13th meeting, Dean Portanova compared Purcell to an old car, asking him, "would you really want to ride in it if it's just going to break down.  I wouldnt get back in it if it had already broken down once."  This comment was directly referencing Purcells disability. (Amd. Cmp. ¶ 42)

Additionally at this June 13th meeting, when Purcell stated that he at times experienced anxiety, he had matured in medical school, to which a faculty member on the committee stated to the others that, he came out of the closet late,  specifically referencing Purcells sexual orientation. (Amd. Cmp. ¶ 43)

Purcell again met with the Student Progress Committee on August 15, 2013, and thereafter had a personal meeting with Dean Gilliar on August 27, 2013.  By letter dated August 28, 2013 Purcell was dismissed from the program by Dean Gilliar, who stated,

> After our meeting on August 27, 2013 and a careful review of your academic progress including consideration of the personal circumstances that may have contributed to your poor performance,

8

> I am upholding the recommendation of the Student Progress Committee that you be dismissed without the opportunity for re-instatement to repeat the year. I wish you well in your future endeavors. (Amd. Cmp. ¶¶ 44-45)

Purcell duly appealed the decision of Dean Gilliar, to Ronald Portanova, Ph. D., Associate Dean, Academic Affairs Division, by letter dated April 2, 2014. Purcell's appeal was denied. (Amd. Cmp. ¶ 46)

Purcell's termination by NYIT was discriminatory and retaliatory based on his disability, perceived disability, gender (sexual orientatio) and complaints of discrimination (retaliation). Purcell was told by a Dean at NYIT that Purcell would not learn from any mistakes in his fourth year because Purcell was, "sick with something more difficult to live with than cancer." Purcell was also informed that the Deans, when speaking about Purcell, referred to him as a "bum," in reference to what they perceived to be a mental issues constituting a disability. (Amd. Cmp. ¶¶ 47-48)

Additionally, during the process to seek reinstatement, Purcell was asked by Dean Gregory Saggio, would you want yourself treating your own mother if she had a brain tumor," and then immediately asked Purcell what medications he was taking by stating, "what are you on?" Both were made in reference to Purcell's disability and perceived disability. Additionally, Dean Saggio asked Purcell if he ever stops taking medication or if he will ever be able to stop." Purcell assured him that Purcell's disability and any medication he took had no effect on his rotation failures. (Amd. Cmp. ¶ 49)

## E.    Purcell's Current Action

Purcell commenced the instant action by filing a Summons and Complaint on or about May 13, 2016 in the Supreme Court of the State of New York. The action was removed by Defendant

to the United States Court for the Eastern District of New York on June 28, 2016.  Following a

pre-motion conference with this Court, Plaintiff filed an Amended Complaint removing his cause

of action under the New York City Human Rights Law and correcting a typo in the ADA statute

set forth in the Complaint.  Defendant's have now moved for dismissal pursuant to Federal Rule

of Civil Procedure 12(b)(6) alleging that the action is time barred based on the four-month statute

of limitations under Article 78 of the CPLR.

**ARGUMENT**

**POINT I**

**APPLICABLE STANDARDS REGARDING A MOTION TO DISMISS**

Under the Federal Rules, a claimant must provide a "short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When deciding a motion to

dismiss for failure to state a claim pursuant to Federal Rule 12 (b)(6), the court must accept as true

all well-pleaded facts alleged in the complaint and draw all reasonable inferences in plaintiff's

favor.  See Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007)). In order to

survive a motion to dismiss pursuant to Federal Rule 12(b)(6), a Plaintiff must plead enough facts

to state a claim to relief that is plausible on its face. See Bell Atl Corp. v. Twombly, 550 U.S. 544,

570 (2007). A facially plausible claim is one where "the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Where the court finds well-pleaded factual

allegations, it should assume their veracity and determine whether they "plausibly give rise to an

entitlement to relief." Iqbal, 129 S. Ct. at 1950. In ruling on a motion to dismiss, a "court may

consider the facts asserted within the four corners of the complaint together with the documents

attached to the complaint as exhibits, and any documents incorporated in the complaint by

10

reference." Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 64 (2d Cir. 2010)

(internal quotation and citation omitted).


## POINT II

**PLAINTIFF HAS PROPERLY COMMENCED THIS ACTION ALLEGING
DISCRIMINATION PURSUANT TO THE ADA, TITLE IX AND NYSHRL**

**A.      Purcell's Allegations of Discrimination**

Defendant's argument that Plaintiff's Complaint should have been brought as an Article

78 Proceeding is unsupported by the case law cited by Defendant's, as it ignores the very basis of

the allegations of Plaintiff's Complaint which is that he was discriminated by NYIT.  Title III of

the ADA prohibits discrimination against individuals 'on the basis of disability in the full and

equal enjoyment of the....services...of any place of public accommodation...'" Roberts v. Royal

Atl. Corp., 542 F.3d 363, 368 (2d Cir. 2008).  Courts "examine claims of disability

discrimination pursuant to the ADA under the burden-shifting analysis established in McDonnell

Douglas Corp v. Green, 411 U.S. 792 (1973).

It is undisputed that Title III of the ADA prohibits private colleges and universities from

discriminating against people with disabilities.  *See* 42 U.S.C. §§ 12182.  While in the context of

a graduate education setting, "a certain degree of deference is owed to the judgment of an academic

institution," Plaintiff is no way precluded from asserting a disability discrimination claim against

a private university.  *See* Regents of University of Michigan v. Ewing, 474 U.S. 214 (1985); Doe

v. New York Univ., 666 F.2d 761, 775-776 (2d Cir. 1981); Roggenbach v. Touro College of

Osteopathic Medicine, 7 F. Supp. 3d 338 (SDNY 2014).

Additionally, Plaintiff has a right to pursue this action pursuant to Title IX of the Education

Amendments Act of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX").  Title IX provides, in pertinent

part: "No person in the United States shall, on the basis of sex, be excluded from participation in,

be denied benefits of, or be subjected to discrimination under any education program or activity

receiving Federal financial assistance."  20 U.S.C. § 1681(a).  "Discriminatory actions restrict an

individual in any way in the enjoyment of any advantage or privilege enjoyed by others receiving

any service, financial aid, or other benefit under the school system...Educational benefits include

an academic environment free form [class-base] hostility.  <u>Zeno v. Pine Plains Cent. Sch. Dist,</u>,

702 F.3d 655, 666 (2d Cir. 2012).

Defendant's argument ignores the entirety of Plaintiff's allegations as to the discriminatory

treatment and retaliation which he was subjected to at NYIT.  Plaintiff has set forth allegations of

discrimination throughout his enrollment at NYIT and also clearly alleges that his dismissal from

the Program was discriminatory and retaliatory in nature.

In particular, the allegations of the disability discrimination to which Purcell was subjected

to began following an incident of stalking in September 2010 which caused Purcell to seek the

assistance of Dean Bryant due to the anxiety he was suffering from just prior to a scheduled exam

on October 22, 2010.  (Amd. Cmp. ¶ 13).  Thereafter Dean Bryant suggested that he speak with

other faculty, and brought Purcell to the office of Cheryl Newman, where Purcell also met Dean

Abraham Jeger, Dean Felicia Bruno and Dean Mary Ann Achtzinger for the first time.  Purcell,

discussed his grades and personal situation with them.  Once Purcell began describing the situation,

Dean Jeger began interviewing Purcell from a psychological standpoint, including asking mini

mental status type questions, focused schizophrenic questions, psychiatric questions and questions

about Purcell's medical history.  With all of these Deans present for the questioning, Purcell

became embarrassed and upset and began crying.  Purcell explained to them that he understood

12

their concern but that he was not experiencing hallucinations or delusions regarding the stalking situation and that his roommates and friends had also witnessed it.  The deans insisted that Purcell see his primary care physician, Dr. Carlos Maghaeles at the academic health center on campus. (Amd. Cmp. ¶ 14)

The Deans also suggested that Purcell schedule an appointment with Cheryl Newman, as soon as possible, which Purcell did the following week.  Purcell informed them that his psychiatrist was already aware of the situation and Purcell was being counseled.  Purcell said that he would leave campus to regroup, and that he was able to drive home, however the Deans would not permit him to leave and they all walked him across campus to the academic health center.  (Amd. Cmp. ¶¶ 15-17)

Thus the Deans at NYIT had become aware of Purcell's medical situation and sexuality, thereafter subjecting him to a pattern of discriminatory treatment as a result.  Beginning the following week, Purcell was subjected to numerous question about his personal life, medical history and medication at a meeting with Dean Jeger, Dean Bruno and campus safety personal. (Amd. Cmp. ¶ 18).  Thereafter NYIT even pressured Purcell into signing a medical release for the Defendant to view his medical records.  (Amd. Cmp. ¶¶ 19-20)

Plaintiff has also clearly set forth allegations showing a knowledge of discriminatory treatment due to his sexual orientation.  For example, in a conversation with Defendant's student life counselor/coordinator, Linda Daroch-Short, she commented to Purcell that many of the deans which he was dealing with had old-school and religious viewpoints which did not allow them to be comfortable with or understand Purcell's situation and sexual orientation (Gay).  (Amd. Cmp. ¶¶ 21).  Additionally, Purcell was informed by his roommate that she learned from faculty member Karen Sheflin, that Purcell was a frequent topic of conversation at staff meetings, including

discussions about both his personal and academic life.  (Amd. Cmp. ¶ 23)

Purcell was also subjected to further discrimination based on his sexual preference in that he was sent x-rated pictures on a phone application (Grindr) by an employee of Defendant, Dr. William Blazey.  Additionally, Purcell was subjected to homophobic remarks during lectures given by Dean Scandalis, as well as other staff, throughout the 2nd year.  In response, Purcell became instrumental in creating an LGBT club on campus, and during Purcell's third year he attended meetings at which he spoke about LGBT health issues and LGBT education for the faculty and staff because of the offensive and outdated comments/instruction that were being given in class. (Amd. Cmp. ¶ 25).  Specifically, in clinical case studies prepared and utilized by the NYIT faculty, medical histories of patients included such diagnoses as significant for homosexuality. Additionally, Purcell heard a professor use the terms, "pitcher and catcher" describe gay men when lecturing to the class.  (Amd. Cmp. ¶ 26)

Upon information and belief the faculty were aware of Purcell's complaints of discriminatory comments, as multiple professors sat in on these meetings and retaliated against him as a result.  (Amd. Cmp. ¶ 27)

While Defendant's stress that Purcell's claim is merely a challenge to his dismissal as an academic determination, what is overlooked is his specific allegations that the dismissal was discriminatory (sexual orientation and disability) and gender.

During Purcell's fourth and final year as a medical student he failed three clerkships, however two of those clerkships were determined to be defective as clerkships by the School. (Amd. Cmp. ¶ 28).  Purcell addresses why his failures of the clerkship were not a legitimate reason for his dismissal and additionally sets forth the allegations of discrimination and retaliation.

On May 5, 2013 Purcell walked at his graduation from NYIT.  It was not until, a week

later, that Purcell was informed that he was scheduled for a disciplinary hearing on May 22, 2013 with the Student Discipline Review Board on May 22, 2013 based on an allegation that he violated the NYIT College of Osteopathic Medicine Code of Conduct for Academic Honesty.  (Amd. Cmp. ¶¶ 34-35)

By letter dated May 22, 2013, from Dean Wolfgang G. Gilliar, D.O., Purcell was informed that, the Board has determined that you are guilty of violating the NYIT College of Osteopathic Medicine Code of Conduct for Academic Honesty.  (Amd. Cmp. ¶ 36)

The Board is imposing the penalty of suspension for a period of at least six months as defined in the 2012-2013 Student Handbook as:

> **Suspension**- Suspension from academic enrollment and revocation of other privileges or activities and from the privilege to enter on the campus premises of related facilities for a period of time not to exceed two years.  Criteria for return if appropriate will be specifically outlined in writing.  Suspension becomes part of the student's permanent record.
> The potential return from the suspension is contingent upon a complete review of evaluations of your fourth year clerkships and a psychiatric evaluation performed by a physician chosen by the College.  (Amd. Cmp. ¶ 36)

Defendant had no legitimate basis for conditioning his return from a suspension on the results of a psychiatric evaluation.  By letter dated June 3, 2013, again from Dean Gilliar, Purcell was informed that the above conditions for possible return from a suspension outlined in the May 22, 2013 were contingent  upon a complete review of evaluations of your fourth year clerkships. As a result, Purcell was dismissed from NYIT College Osteopathic Medicine.   (Amd. Cmp. ¶¶ 37-38)

According to the June 3, 2013 letter Purcell had the right, "to petition to be reinstated to repeat the current curriculum, on academic probation, as a member of the following year's class,"

by writing a letter to the Dean of Student Affairs and meeting with the Student Progress Committee.  Purcell met with the Student Progress Committee on June 13, 2013, and Dean Gillar issued a letter on June 14, 2013 stating,

> Following your meeting with the Student Progress Committee on June 13, 2013 the committee is requiring a psychiatric assessment at the Zucker Center before rendering their decision on your petition to return and repeat the fourth year.  I concur with their decision. (Amd. Cmp. ¶¶ 39-40)

Defendants improperly based Purcell's Petition for Reinstatement on Purcell's mental health.  In particular, the first questions posed by the Student Progress Committee on June 13, 2013, were those which probed Purcell's mental health situation.  In particular, at the start of each committee meeting Atzinger would make everyone present aware of Purcell's medical history and that he was treating with Dr. Belkin.  (Amd. Cmp. ¶ 41)

At this June 13th meeting, Dean Portanova compared Purcell to an old car, asking him, "would you really want to ride in it if it's just going to break down.  I wouldn't get back in it if it had already broken down once."  This comment was directly referencing Purcell's disability. (Amd. Cmp. ¶ 42)

Additionally at this June 13th meeting, when Purcell stated that he at times experienced anxiety, he had matured in medical school, to which a faculty member on the committee stated to the others that, he came out of the closet late,  specifically referencing Purcell's sexual orientation. (Amd. Cmp. ¶ 43)

Purcell again met with the Student Progress Committee on August 15, 2013, and thereafter had a personal meeting with Dean Gilliar on August 27, 2013.  By letter dated August 28, 2013 Purcell was dismissed from the program by Dean Gilliar, who stated,

> After our meeting on August 27, 2013 and a careful review of your academic

16

progress including consideration of the personal circumstances that may have contributed to your poor performance, I am upholding the recommendation of the Student Progress Committee that you be dismissed without the opportunity for re-instatement to repeat the year. I wish you well in your future endeavors. (Amd. Cmp. ¶¶ 44-45)

Purcell duly appealed the decision of Dean Gilliar, to Ronald Portanova, Ph. D., Associate Dean, Academic Affairs Division, by letter dated April 2, 2014. Purcell☐s appeal was denied. (Amd. Cmp. ¶ 46)

Purcell☐s termination by NYIT was discriminatory and retaliatory based on his disability, perceived disability, gender (sexual orientation) and complaints of discrimination (retaliation). Purcell was told by a Dean at NYIT that Purcell would not learn from any mistakes in his fourth year because Purcell was, "sick with something more difficult to live with than cancer." Purcell was also informed that the Deans, when speaking about Purcell, referred to him as a "bum," in reference to what they perceived to be a mental issues constituting a disability. (Amd. Cmp. ¶¶ 47-48)

Additionally, during the process to seek reinstatement, Purcell was asked by Dean Gregory Saggio, would you want yourself treating your own mother if she had a brain tumor," and then immediately asked Purcell what medications he was taking by stating, "what are you on?" Both were made in reference to Purcell's disability and perceived disability. Additionally, Dean Saggio asked Purcell if he ever stops taking medication or if he will ever be able to stop." Purcell assured him that Purcell's disability and any medication he took had no effect on his rotation failures. (Amd. Cmp. ¶ 49)

Thus it is clear that Plaintiff has set forth claims of discrimination and retaliation, which he is entitled to pursue under the ADA, Title IX and the NYSHRL. The authority cited by Defendant's is distinguishable in that none of the cases contain discrimination claims alleged under

these same statutes and thus are inapplicable to the instant matter.  *See* <u>Silverman v. New York Univ. School of Law</u>, 193 A.D.2d 411 (1st Dep't); <u>Bylerly v. Ithica College</u>, 290 F.Supp.2d 301, 305 (N.D.N.Y. 2003); <u>Flores v. New York Univ.</u>, 79 A.D.3d 502 (1st Dep't 2010).

**B.      The action is timely**

As set forth clearly by the Second Circuit Court of Appeals, <u>Curto v. Edmundson</u>, the statute of limitations for a students ADA and Title IX discrimination claims against a private university are governed by the statute of limitations for personal injury actions.  (04-0395, December 17, 2004).  In New York, personal injury claims must be filed within three years from the time the cause of action accrued.  NY CPLR Sec. 214(5); *See also* <u>Twersky v. Yeshiva Univ.</u>, 993 F. Supp. 2d 429, 437 (SDNY 2014) ("The statute of limitations for Title IX actions is three years").  Thus, Plaintiff's claims are timely as the decision to dismiss Plaintiff was made within three years of the commencement of this action.

<u>**CONCLUSION**</u>

Plaintiff  respectfully submits that Defendant's motion be denied in its entirety and any other relief that is just and equitable.

Dated: New York, New York
        December 8, 2016

Respectfully submitted,

STEWART LEE KARLIN
LAW GROUP, P.C.


 s/ Daniel E. Dugan
DANIEL E. DUGAN, ESQ.
*Attorney for Plaintiff*
111 John Street, 22nd Floor
New York, N.Y.  10038
(212) 792-9670

18