UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                     For Online Publication Only
----------------------------------------------------------------X
JOHN PURCELL,

                Plaintiff,

        -against-                                      **MEMORANDUM AND ORDER**
                                  16-CV-3555 (JMA)(AKT)
NEW YORK INSTITUTE OF TECHNOLOGY –
COLLEGE OF OSTEOPATHIC MEDICINE,

                Defendant.
----------------------------------------------------------------X
**APPEARANCES:**

        Daniel E. Dugan
        Stewart Lee Karlin Law group, P.C.
        111 John St., 22nd Floor
        New York, NY 10038
            *Attorney for Plaintiff*

        Douglas Catalano
        Stefanie R. Munsky
        Jamie Lang
        Clifton Budd & DeMaria, LLP
        The Empire State Building
        350 Fifth Avenue, 61st Floor
        New York, NY 10018
            *Attorneys for Defendant*

**AZRACK, United States District Judge:**

On or about May 13, 2016, plaintiff John Purcell ("Plaintiff"), a former medical student at

New York Institute of Technology's College of Osteopathic Medicine, commenced this action

against New York Institute of Technology ("NYIT" or "Defendant") in the Supreme Court of the

State of New York, Richmond County.  NYIT removed the action to this Court on June 28, 2016.

(See ECF No. 1.)  In his amended complaint, filed on September 14, 2016, Plaintiff alleged claims

of discrimination based upon his disability, his perceived disability, and gender (sexual preference)

and retaliation for his complaints of discrimination in violation of the American with Disabilities

Act ("ADA"), 42 U.S.C. § 12182, Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX") and New York Executive Law § 296 (New York State Human Rights Law).  (See generally Amended Complaint ("Am. Compl."), ECF No. 12.)

On January 6, 2017, Defendant moved to dismiss the amended complaint.  On August 4, 2017, Magistrate Judge A. Kathleen Toliminson issued a report and recommendation ("R&R") recommending that the Court grant Defendant's motion to dismiss Plaintiff's discrimination and retaliation claims relating to events that occurred on or after Plaintiff's May 22, 2013 disciplinary hearing, including claims related to Plaintiff's termination from NYIT's medical program (the "2013 Claims").  (See ECF No. 20.)  On September 18, 2017, after the parties submitted their respective objections to the R&R, the Court adopted the R&R in its entirety.  (See ECF No. 27.)

On December 8, 2017, Defendant moved to dismiss Plaintiff's remaining claims on the grounds that they are untimely.  For the reasons set forth below, Defendant's motion to dismiss is GRANTED.

## I.   BACKGROUND

The Court assumes the parties' familiarity with the facts as set forth more fully in Magistrate Judge Tomlinson's R&R and provides a summary of only the pertinent facts.  The allegations in the amended complaint are assumed to be true for the purposes of this motion.

Plaintiff enrolled as a medical student in NYIT's College of Osteopathic Medicine in 2009.  (Am. Compl. ¶ 8.)  At the time of his enrollment, Plaintiff alleges that he had a "disability and perceived disability (ADHD and Anxiety) that impacted major life activities."   (Id. ¶ 9.)  Specifically, these conditions resulted in Plaintiff experiencing "chronic fatigue, headaches, insomnia, diminished sex drive, and memory."  (Id.)  Plaintiff did not disclose his ADHD or

Anxiety to NYIT at the time of his enrollment.  (Id. ¶ 10.)  It was not until Plaintiff's second year of medical school that he informed a pre-clinical Dean of his conditions.  (Id.)

## A.  Plaintiff's Second Year of Medical School

On October 22, 2010, Plaintiff was scheduled to take an examination at NYIT, but was unable to do so due to extreme anxiety caused, in part, by what Plaintiff describes as a "stalking situation" where Plaintiff "began receiving incessant phone calls and Facebook messages."  (Am. Compl. ¶ 14.)  Plaintiff sought help from Claire Bryant, a pre-clinical dean at NYIT, who suggested that he speak with other faculty about his situation.  (Id.)  Plaintiff then met with Deans Bryant, Jeger, Bruno, and Achtzinger as well as Cheryl Newman[1], and "discussed his grades and personal situation with them."  (Id.)  After this discussion, Dean Jeger asked Plaintiff various questions concerning his medical and psychological history, which embarrassed and upset Plaintiff.  (Id.)  The deans insisted that Plaintiff see his primary care physician and suggested that he schedule an appointment with Cheryl Newman as soon as possible.  (Id. ¶ 15.)

The next week, Plaintiff was called to Dean Achtzinger's office to further "discuss his health and security issues."  (Am. Compl. ¶ 18.)  Dean Jeger, Dean Bruno and the head of campus security were also present at the meeting.  (Id.)  After the security personnel left the meeting, "Plaintiff was again asked multiple questions about his personal life, medical history and medication."  (Id.)  Once the meeting concluded, "Dean[s] Jeger and Achtzinger asked to have Plaintiff's medical records released to them from Dr. Belkin," Plaintiff's doctor.  (Id. ¶ 19.)

In addition to these meetings with faculty, Plaintiff alleges that during the 2010-2011 school year, he "was also subjected to further discrimination based upon his sexual preference" as evidenced by the following: (1) being "sent x-rated pictures on a phone application (Grindr) by an

---

[1] The Amended Complaint does not identify Cheryl Newman's position or title.

employee of Defendant, Dr. William Blazey;" (2) "homophobic remarks [made] during lectures given by Dean Scandalis, as well as other staff;" (3) "clinical case studies prepared and utilized by the NYIT faculty [which included] . . . diagnoses as 'significant for homosexuality;'" and (4) a professor's use of the terms "'pitcher and catcher' to describe gay men when lecturing to the class." (Id. ¶¶ 24-26.)  Plaintiff asserts that in response to these incidents, he "became instrumental in creating an LGBT club on campus."  (Id. ¶ 25.)  Further, Plaintiff states that "[u]pon information and belief the faculty were aware of Plaintiff's complaints of discriminatory comments, as multiple professors sat in on these meetings and retaliated against him as a result."  (Id. ¶ 27.)

**B.  Plaintiff's Fourth Year of Medical School**

During Plaintiff's final year of medical school, he "failed three clerkships," two of which "were determined to be defective as clerkships by the School."  (Am. Compl. ¶ 28.)  Plaintiff walked at his graduation, but was informed one week later that "he was scheduled for a disciplinary hearing on May 22, 2013 based an allegation that he violated the NYIT College of Osteopathic Medicine Code of Conduct for Academic Honesty."  (Id. ¶¶ 34-35.)  Plaintiff was later informed by letter dated May 22, 2013 that the Student Discipline Review Board had "determined that he was guilty of violating NYIT's Code of Conduct for Academic Honesty" and that he would be suspended for a period of at least six months.  (Id. ¶ 36.)  The letter also stated, "[t]he potential return from the suspension is contingent upon a complete review of evaluations of your fourth year clerkships and a psychiatric evaluation performed by a physician chosen by the College."  (Id.) Plaintiff was informed by letter dated June 3, 2013 from Dean Gillar that Plaintiff was being "dismissed from the NYIT College of Osteopathic Medicine" because he had failed three clerkships.  (Id. ¶ 38.)

Plaintiff petitioned to return to NYIT and to repeat his fourth year of medical school.  (Am. Compl. ¶ 40.)  On June 13, 2013, Plaintiff met with the Student Progress Committee regarding his petition.  (Id. ¶ 41.)  Plaintiff alleges that at this meeting, "Dean Portanova compared Plaintiff to an old car, asking him, 'would you really want to ride in it if its [sic] just going to break down.  I wouldn't get back in it if it had already broken down once" and that "[t]his comment was directly referencing Plaintiff's disability."  (Id. ¶ 42.)  According to Plaintiff, another faculty member stated "he came out of the closet late" in response to Plaintiff's assertion that "he at times experienced anxiety, [but] he had matured in medical school."  (Am. Compl. ¶ 43.)  Following this meeting, Dean Gillar sent Plaintiff a letter, which stated that the Student Progress Committee would require a psychiatric assessment before rendering a decision on Plaintiff's petition to return to NYIT.  (Id. ¶ 40.)

Plaintiff met with the Student Progress Committee again on August 15, 2013 and with Dean Gillar on August 27, 2013.  (Id. ¶ 44.)  Plaintiff was notified via letter from Dean Gillar dated August 28, 2013 that after "a careful review of [Plaintiff's] academic progress including consideration of the personal circumstances that may have contributed to [his] poor performance," Plaintiff was being dismissed from NYIT "without the opportunity for re-instatement to repeat the year."  (Id. ¶ 45.)  Plaintiff appealed his dismissal, but the appeal was denied.  (Id. ¶ 46.)

## II.   DISCUSSION

### A.  Standard of Review

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court takes the complaint's factual allegations to be true and draws all reasonable inferences in the plaintiff's favor.  Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).  That principle, however, is "inapplicable to legal conclusions."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Moreover, a complaint must

plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556).

**B.   Timeliness of Plaintiff's Claims**

As an initial matter, Plaintiff argues that Defendant waived its statute of limitations defense as it was raised for the first time in Defendant's reply brief in support of Defendant's first motion to dismiss.  This argument is meritless as the Court already addressed this issue at a pre-motion conference on September 26, 2017 and issued an order allowing Defendant to file the instant motion to dismiss.  (See ECF No. 28.)

Plaintiff brings his claims pursuant to the ADA, Title IX, and NYHRL § 296, all of which are subject to a three-year statute of limitations.  See Volpe v. New York City Dep't of Educ., 195 F. Supp. 3d 582, 594 (S.D.N.Y. 2016) (ADA); De La Rosa v. Lewis Foods of 42nd St., LLC, 124 F. Supp. 3d 290, 299 (S.D.N.Y. 2015) (ADA); Curto v. Edmundson, 392 F.3d 502, 504 (2d Cir. 2004) (Title IX); N.Y. C.P.L.R. § 214 (NYHRL).  The parties agree that this limitation period applies, but disagree about whether the continuing violation doctrine saves Plaintiff's otherwise untimely claims premised on events that occurred during the 2010-2011 school year (the "2010-2011 Claims").

Plaintiff argues that he "clearly alleges a hostile environment based upon his disability, perceived disability and due to his sexual orientation, which continued up and through his dismissal from school." (Opp. 14)  Plaintiff also argues that  Defendant engaged in a "continued

6

practice" of discrimination and retaliation and that the allegedly discriminatory acts underlying the

2010-2011 Claims "were of the same nature" as those underlying the 2013 Claims. (Id.)  Because

the acts underlying the 2013 Claims occurred within the three-year statute of limitations, Plaintiff

contends that the 2010-2011 Claims are timely.   Defendant, on the other hand, provides two

reasons why the continuing violation doctrine does not apply in this case.  First, Defendant argues

that Plaintiff's 2013 Claims have already been dismissed as time-barred and that Plaintiff cannot

maintain a continuing violation theory based on claims that are no longer part of this action.

Second, Defendant contends that the discriminatory conduct that Plaintiff alleges took place in

2010-2011 are discrete acts that do not relate to the 2013 Claims and therefore no continuous

practice or policy of discrimination exists.

"[U]nder the continuing violation doctrine, a plaintiff may bring claims for discriminatory

acts that would have been barred by the statute of limitations as long as 'an act contributing to that

hostile environment [took] place within the statutory time period.'"  Papelino v. Albany Coll. of

Pharmacy of Union Univ., 633 F.3d 81, 91 (2d Cir. 2011) (quoting McGullam v. Cedar Graphics,

Inc., 609 F.3d 70, 75 (2d Cir. 2010)).  However, "discrete discriminatory acts are not actionable if

time barred, even when they are related to acts alleged in timely filed charges." National Railroad

Passenger Corp v. Morgan, 536 U.S. 101, 113 (2002).   Additionally, a discrete act of

discrimination within the limitations period cannot save an otherwise untimely hostile work

environment claim.  See Patterson v. Cty. of Oneida, N.Y., 375 F.3d 206, 220 (2d Cir. 2004).

Despite Plaintiff's arguments to the contrary, the amended complaint does not plausibly

allege that the 2010-11 Claims and the 2013 Claims are part of the same alleged hostile

environment practice.  McGullam, 609 F.3d at 77.  Plaintiff's 2010-2011 Claims are based on a

handful of comments made by *various* faculty members over the course of the entire school year

7

and allege two different types of discrimination: (1) disability and perceived disability and (2) gender/sexual orientation.  The 2013 Claims, on the other hand, all "relate[] to the academic or disciplinary determination made by NYIT, or to the procedures followed in reaching those determination[s]," and there appears to be little, if any, overlap between the individuals involved in 2013 Claims and the alleged harassers involved in the 2010-2011 Claims.  (R&R at 26.)  Furthermore, as Judge Tomlinson noted in the R&R, the 2010-2011 Claims "have no temporal nexus to the [2013] disciplinary proceedings and resulting decision to dismiss Plaintiff from NYIT which occurred more than two years later."  (R&R 27.)  The allegedly discriminatory acts upon which Plaintiff bases his claims are not sufficiently related to one another and are too sporadic to constitute a continuing policy or practice of discrimination or a hostile environment practice that spanned from 2010 to 2013.[2]  See, e.g., Irrera v. Humpherys, 695 F. App'x 626, 629 (2d Cir. 2017) (holding that "unwanted sexual touching and retaliation allegedly committed by [a faculty member] in 2010 and 2011 and the allegedly sexual facial expressions made by [the *same individual*] between 2012 and 2014 were discrete acts of harassment separated by multiple years of inactivity.").

Moreover, because Plaintiff's 2013 Claims are premised on a discrete act—his dismissal from NYIT—those claims cannot save his untimely 2010-2011 Claims.  See Morgan, 536 U.S. at 114 (holding that "termination, failure to promote, denial of transfer, or refusal to hire" are "discrete acts"); Brown v. New York City Dep't of Educ., 513 F. App'x 89, 91 (2d Cir. 2013) (holding that plaintiff's termination could not save her otherwise time-barred hostile work environment claim "because her termination was a separate and discrete act."); Patterson, 375 F.3d

---

[2] Because the Court finds that Plaintiff has failed to allege a hostile environment that spanned from 2010 to 2013, it need not reach Defendant's argument that Plaintiff cannot rely on the 2013 Claims to demonstrate a continuing violation because they were previously dismissed from this action.

at 220 ("[T]he mere fact that an employee was dismissed within the statutory period cannot be used to pull in a time-barred discriminatory act.") (quoting Morgan, 536 U.S. at 113) (internal quotation marks and alterations omitted); Fierro v. New York City Dep't of Educ., 994 F. Supp. 2d 581, 587 (S.D.N.Y. 2014) ("Although [plaintiff] alleges that the [untimely] hostile work environment created by defendants before May 30, 2010 led to her constructive discharge, that allegation is insufficient to resuscitate her time-barred claims.").

Thus, the continuing violation doctrine is not applicable—Plaintiff's 2010-2011 Claims are time-barred and are hereby dismissed.

## III.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's remaining claims is GRANTED.  The Clerk of Court is directed to close this case.

**SO ORDERED.**

Date:   August 30, 2018                                      /s/ (JMA)
      Central Islip, New York                           JOAN M. AZRACK
                                    UNITED STATES DISTRICT JUDGE